**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LESLIE JOHNSON                                                                    PLAINTIFF

v.                                          No. 4:05CV01558 JLH

DILLARD'S, INC.; DILLARD DEPARTMENT
STORES, INC.; W.D. COMPANY, INC.; and
DILLARD STORE SERVICES, INC.                                    DEFENDANTS

## OPINION AND ORDER

Leslie Johnson brought this action against Dillard's, Inc., and three affiliated companies as a result of an incident that occurred at a Dillard's store in Fayetteville, Arkansas. According to Johnson, she took three pairs of black and white pants and two black shirts into a dressing room to try them on. She returned the items that she did not intend to purchase to the clothing racks and purchased one pair of pants. After purchasing the pants, she and two friends who were with her went to the parking lot to leave. As she was about to open the car door, she was approached by a white male with a Dillard's logo on his shirt. The man stated, "You need to come back with me." Johnson followed him back to the store. She went into a private room with him where she was asked to sit down. He told her that the surveillance tapes showed that she took five items into the dressing room and only came out with four of them. He also told her that they could not find one of the shirts that she had taken into the dressing room. He then checked her purse and shopping bags but did not find the missing shirt. Johnson then left. Johnson was kept in the room for thirty to forty-five minutes even though she had done nothing wrong.

Johnson went home, called her mother, told her mother what happened, and cried. That night, she took medication for her stomach and head so that she could sleep. She felt embarrassed,

humiliated, and sick.  She testified, "I felt it was an attack on my dignity and my character as a person."  She still gets emotional about it.

Johnson's complaint alleged eight claims for relief:  false imprisonment, assault and battery, negligence, defamation, outrage, invasion of privacy, an unnamed seventh cause of action, and a claim for racial discrimination in violation of 42 U.S.C. §§ 1981 and 1982.  The Court previously dismissed Johnson's claims for false imprisonment, assault, battery, defamation, and invasion of privacy because those claims are barred by the statute of limitations.  The defendants have now moved for partial summary judgment.  They seek summary judgment on Johnson's claims arising under § 1981 and § 1982, her claim of outrage, her unnamed seventh cause of action, her claim that the defendants were alter egos of each other, and her claim for punitive damages.

In her response to the motion for summary judgment, Johnson states that she is abandoning the seventh cause of action.  She states also that she provides no response to the motion for summary judgment on the §§ 1981 and 1982 claims, nor does she respond to the argument that the corporations are not alter egos of one another.  She objected to the motion for summary judgment on tort of outrage and on the issue of whether punitive damages can be granted.

The defendants have established a prima facie case of entitlement to summary judgment on Johnson's claims arising under 42 U.S.C. § 1981 and § 1982, on their contention that the corporations are not alter egos of one another, and on the seventh cause of action.  Because Johnson has not responded to the motion for summary judgment on those claims, summary judgment is hereby granted in favor of the defendants on those claims.

On the issue of tort of outrage, the defendants rely primarily on *Dillard Dept. Stores, Inc. v. Adams*, 315 Ark. 303, 867 S.W.2d 442 (1993).  There, the Supreme Court of Arkansas reversed in

2

a case in which a jury found Dillard's liable for the tort of outrage.  The court stated the facts in that

case as follows:

> Mary Adams was shopping for a bathing suit at Dillards in Jonesboro.  She tried on
> several suits in one of the store's dressing rooms.  Peggy Hallmark, a sales manager
> with Dillards said that, through the vents in the dressing room door, she observed Ms.
> Adams switch the price tags on two bathing suits.  Except for minor differences in
> testimony by Ms. Hallmark and Ms. Adams there is no dispute as to the remainder
> of the relevant events.
>
> Ms. Adams left the dressing room with a bathing suit and continued shopping in the
> store.  Ms. Hallmark continued observing Ms. Adams until Ms. Adams purchased the
> bathing suit with her Dillard's credit card.  As Ms. Adams was leaving the store, Ms.
> Hallmark and a security guard stopped her.  Identifying herself as "Dillards security,"
> Ms. Hallmark asked Ms. Adams if she could accompany them to the rear of the store.
>
> In a manager's office, Ms. Hallmark confronted Ms. Adams about switching the price
> tag to obtain the bathing suit she had purchased at a price lower than that originally
> marked on that suit.  Ms. Adams denied any wrongdoing.  The store manager and the
> Jonesboro Police were called.  The store manager questioned Ms. Adams and then
> took her picture and told her she was banned from the store.  The police arrived and
> issued a citation to Ms. Adams who was then escorted from the store.  The entire
> incident lasted from twenty minutes to an hour.
>
> After the incident Ms. Adams suffered from depression.  Her husband became so
> concerned he quit his job as a truck driver as he felt the need to stay at home due to
> his wife's condition.  Ms. Adams saw a psychologist and a psychiatrist.  Both
> diagnosed her as being depressed.  Medication was prescribed for her, and her
> condition stabilized somewhat.
>
> A theft charge against Ms. Adams was dismissed by the Jonesboro Municipal Court.

*Id*. at 304-05, 867 S.W.2d at 442-43.  The court held:

> Outrage, or intentional infliction of emotional distress, was first recognized by this
> Court, in its current form, in *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681
> (1980).  We stated "one who by extreme and outrageous conduct wilfully and
> wantonly causes severe emotional distress to another is subject to liability for such
> emotional distress and for bodily harm resulting from the distress."  We said, "[b]y
> extreme and outrageous conduct, we mean conduct that is so outrageous in character,
> and so extreme in degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized society."  We were quoting

RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1977).

In subsequent decisions, we have addressed outrage in a cautious manner. Our recognition of this tort is not intended to "open the doors of the courts to every slight insult or indignity one must endure in life." *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988); *Hess v. Treece*, 286 Ark. 434, 693 S.W.2d 792 (1985); *Tandy Corp. v. Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984).

We cannot say Ms. Adams presented sufficient evidence for a jury instruction on the tort of outrage. Ms. Adams testified the entire incident lasted less than an hour. During that time she was not physically touched, and while Dillards employees may have questioned her in a confrontational manner, there is no evidence that their tone was abusive or harassing. Ms. Adams testified that Ms. Hallmark initially confronted her in a professional manner and in such a way as not to draw the attention of any other customers.

We do not mean to say that Dillards' employees' actions were merely a "slight insult." We recognize Ms. Adams may well have suffered mental distress as a result of them. She was accused of a crime of which she was not convicted. We cannot, however, find in the facts alleged or shown the kind of "extreme degree" of outrageous conduct "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Whatever the merits of the claim of Dillards and Ms. Hallmark as to Ms. Adams's conduct (and we assume no merit in them for purposes of this appeal) nothing that was done constituted conduct fitting our definition of "outrage."

*Id.* at 305-06, 867 S.W.2d at 443-44.

This case cannot be distinguished in any meaningful way from *Adams*. If anything, Adams was treated worse than Johnson, and Adams suffered more severe emotional distress than Johnson has described in her testimony. If Adams did not have a claim for the tort of outrage under Arkansas law, neither does Johnson. Therefore, summary judgment is granted on Johnson's claim for the tort of outrage.

For similar reasons, summary judgment must be granted on Johnson's claim for punitive damages. Ark. Code Ann. § 16-55-206 provides:

In order to recover punitive damages from a defendant, a plaintiff has the burden of

4

proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:

> (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred;

> (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Johnson has presented no evidence that the Dillard's employee or employees involved in this incident acted with malice or in reckless disregard of the consequences from which malice may be inferred, nor that they intentionally pursued a course of conduct for the purpose of causing her injury or damage. Therefore, summary judgment is granted on Johnson's claim for punitive damages.

Johnson asserted in her response that the Court should not rule on the motion for partial summary judgment because discovery was incomplete. The motion was filed on August 25, 2006, ten months after the complaint was filed. Trial was initially been scheduled for September 11, 2006, with a discovery cut-off of June 29, 2006. The discovery deadline passed without Johnson moving for an extension of that deadline. She moved for a continuance of the trial on September 1, 2006. She also moved for an extension of time to respond to the motion for partial summary judgment. The Court granted the continuance and extended the time within which Johnson should respond to the motion for partial summary judgment until November 1, 2006. On November 1, 2006, Johnson moved for another extension of time within which she should respond to the motion for partial summary judgment. The Court extended the time for responding until December 6, 2006. A third motion for extension was filed, and the Court again granted it, extending the time until December 20, 2006. On December 19, 2006, Johnson requested an extension of time until January 19, 2007. The

Court granted that motion and extended the time in which Johnson should respond to the motion for partial summary judgment until January 19, 2007.  On January 19, 2007, Johnson moved for a fifth extension of time until February 9, 2007, and that motion also was granted.  On February 9, 2007, Johnson finally responded to the motion for partial summary judgment that had been filed on August 25, 2006.

Johnson had ample time within which to conduct discovery.  Her argument that it is premature to rule on the motion for partial summary judgment is without merit.

## CONCLUSION

The defendants' motion for partial summary judgment is GRANTED.  Document #40. Summary judgment is granted in favor of the defendants on Johnson's claims arising under 42 U.S.C. §§ 1981 and 1982; on her claim of the tort of outrage; on her seventh cause of action; on her claim that the defendants are alter egos of each other; and on her claim for punitive damages. Although the defendants' motion for partial summary judgment requests that the complaint be dismissed with prejudice, their brief never addressed Johnson's claim of negligence.  Johnson noted in her response that the defendants had not moved for summary judgment on her claim of negligence, and the defendants' reply did not address that issue.  Therefore, Johnson's negligence claim remains for trial.

IT IS SO ORDERED this 18th day of June, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

6